# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CENTRAL DIVISION

| | |
|---|---|
| SANDRA L. SQUIER, <br><br> Plaintiff, <br><br> vs. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | No. 18-CV-3026-LTS <br><br> **REPORT AND RECOMMENDATION** |

Plaintiff Sandra L. Squier seeks judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying her application for disability insurance (DI) benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. Squier argues that the administrative law judge (ALJ), Scot Gulick, erred by failing to consider the combined effect of Squier's impairments, including her potential conversion disorder. Squier also makes (for the first time) an Appointments Clause challenge under *Lucia v. SEC*, 138 S. Ct. 2044 (2018). I recommend **affirming** the ALJ's decision.

## I. BACKGROUND[1]

On July 1, 2014, Squier filed an application for DI benefits, alleging disability based on major depressive disorder, post-traumatic stress disorder, Factor V homozygous mutant both alleles, and anxiety. AR 72, 174. Her alleged onset date, February 17, 2014, coincides with treatment after a fall at work and the development of blood clots and later pulmonary emboli. AR 72, 362, 369-70. Her application was denied initially

---

[1] For a more thorough overview, see the Joint Statement of Facts (Doc. 16).

and on reconsideration. AR 71-103. Squier requested a hearing before an ALJ, and the hearing was held on May 2, 2017. AR 28-30, 119. On June 20, 2017, the ALJ issued a written opinion, following the familiar five-step process outlined in the regulations[2] for determining whether Squier was disabled. AR 11-21. The ALJ found that Squier suffered from severe impairments of deep venous thrombosis (DVT), Factor V Lieden abnormality, chronic obstructive pulmonary disease (COPD), cervical and lumbosacral spine disorders, obesity, anxiety, and depression, but that none of these impairments met or equaled applicable listings. AR 13-15. The ALJ determined Squier's residual functional capacity (RFC)[3] included the ability to perform light work[4] and to sit, stand, and walk for about six hours in an eight-hour workday (each, with usual breaks), and the following limitations:

- not climbing ladders, ropes, or scaffolds, and only occasionally balancing, stooping, kneeling, crouching, and working around dangers (such as unprotected heights and moving mechanical parts);

---

[2] "The five-part test is whether the claimant is (1) currently employed and (2) severely impaired; (3) whether the impairment is or approximates a listed impairment; (4) whether the claimant can perform past relevant work; and if not, (5) whether the claimant can perform any other kind of work." *King v. Astrue*, 564 F.3d 978, 979 n.2 (8th Cir. 2009); *see also* **20 C.F.R. § 404.1520(a)(4)**. The burden of persuasion always lies with the claimant to prove disability, but during the fifth step, the burden of production shifts to the Commissioner to demonstrate "that the claimant retains the RFC to do other kinds of work[] and . . . that other work exists." *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004)).

[3] RFC is "'what the claimant can still do' despite his or her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (quoting *Bradshaw v. Heckler*, 810 F.2d 786, 790 (8th Cir. 1987)).

[4] Light work requires the ability to lift, carry, push and/or pull 20 pounds occasionally and 10 pounds frequently, and to stand, walk, and sit approximately six hours in an eight-hour day. **20 C.F.R. § 404.1567(b)**; **Social Security Ruling (SSR) 96-9p**, 61 Fed. Reg. 34478, 34482 (July 2, 1996). Sedentary work (as referenced in Squier's arguments) requires the ability to occasionally lift ten pounds, to walk and stand for two hours in an eight-hour day, and to sit for six hours in an eight-hour day. **20 C.F.R. § 404.1567(a)**; **SSR 96-9p**, 61 Fed. Reg. at 34480.

- only occasionally working around humidity and wetness, in extreme cold, and around pulmonary irritants (including dust, odors, and fumes);
- performing simple, routine tasks and simple work-related decisions; and
- only occasional interaction with the public.

AR 15. Based on this RFC determination, the ALJ found that Squier could not perform any past relevant work, but that she could perform other work that exists in significant numbers in the national economy, such as mail clerk, router, and electronics assembler. AR 20-21.

The Appeals Council denied Squier's request for review on February 20, 2018 (AR 1), making the ALJ's decision the final decision of the Commissioner. *See* **20 C.F.R. § 404.981**. Squier filed a timely complaint in this court (Doc. 3) on April 11, 2018. *See* **20 C.F.R. § 422.210(c)**. The parties briefed the issues (Docs. 17-19), and the Honorable Leonard T. Strand, Chief Judge of the United States District Court for the Northern District of Iowa, referred this case to me for a Report and Recommendation.

## II.     DISCUSSION

A court must affirm the ALJ's decision if it "is supported by substantial evidence in the record as a whole." **Kirby v. Astrue**, 500 F.3d 705, 707 (8th Cir. 2007); *see also* **42 U.S.C. § 405(g)**. "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision." **Kirby**, 500 F.3d at 707. The court "do[es] not reweigh the evidence or review the factual record de novo." **Naber v. Shalala**, 22 F.3d 186, 188 (8th Cir. 1994). If, after reviewing the evidence, "it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [ALJ's] findings, [the court] must affirm the decision." **Robinson v. Sullivan**, 956 F.2d 836, 838 (8th Cir. 1992). In this case, Squier argues the ALJ failed to consider the combined effects of Squier's impairments, including her potential conversion disorder. Squier also argues the ALJ was not properly appointed as

3

an inferior officer, relying on *Lucia*, 138 S. Ct. 2044. I will address each of these arguments in turn.

### A. *Consideration of Impairments*

Squier argues that the ALJ failed to consider the combined effects of her impairments and that the combination of her impairments limit her to less than sedentary work. Doc. 17 at 3-4. Squier relies on a September 2014 treatment note by her treating pulmonologist, Gary Levinson, MD (Doc. 529), but this reliance is misplaced. Dr. Levinson found Squier's impairments individually were not disabling, and merely explained that a person's combined impairments *may* be disabling. AR 529. Dr. Levinson did not provide a treating source statement or make findings about Squier's functional limitations. In the ALJ's opinion, he discussed Squier's impairments individually, but also outlined the medical record and opinions and specifically noted that he considered the combined effects of Squier's impairments in determining her RFC (as well as in considering applicable listings). AR 14-15; *see also* Doc. 17 at 4 (acknowledging that "[t]he ALJ reviewed various records"). This was sufficient to show the ALJ considered Squier's impairments and their combined effect on her ability to work. *See Martise v. Astrue*, 641 F.3d 909, 924 (8th Cir. 2011).[5]

Squier further argues that the ALJ failed to fully consider how Squier's *potential* conversion disorder impacted her ability to work. Doc. 17 at 4. The ALJ did not mention conversion disorder or appear to consider such an impairment in determining Squier's

---

[5] Despite Squier's argument otherwise (Doc. 17 at 4), the ALJ appears to have fully considered the effects of Squier's combined impairments on her reported shortness of breath. The ALJ's RFC determination limited Squier's exposure to humidity, wetness, extreme cold, and pulmonary irritants. AR 15. The ALJ, in finding Squier's obesity did not warrant greater limitations, noted the "failure of the record to document significant associated complications such as . . . shortness of breath . . . *specifically attributable to*" that severe impairment. AR 18 (emphasis added). Squier fails to point to contrary evidence, and the ALJ's conclusion is supported by substantial evidence in the record, which showed that Squier's shortness of breath was primarily caused by her COPD and continued smoking. AR 398, 529, 602-04.

RFC. A conversion or somatoform disorder "causes [a person] to believe that [the person's] physical ailments are more serious than the clinical data would suggest. . . . In other words, [a person suffering this disorder] experiences . . . physical problems as worse than they may in fact be, and is unable to control this response." *Easter v. Bowen*, 867 F.2d 1128, 1129 (8th Cir. 1989). As a preliminary matter, Squier argues the ALJ erred by failing to develope the record to consider how conversion disorder might have impacted her ability to work (Doc. 17 at 5), but she does not argue the ALJ erred by failing to find that Squier suffers from conversion disorder (either as a severe impairment in considering the listings or as a medically determinable impairment in determining RFC). Indeed, Squier refers to conversion disorder as a "potential" condition throughout her briefing. Significantly, she did not allege conversion disorder as an impairment in either her application or at the administrative hearing. *See Dunahoo v. Apfel*, 241 F.3d 1033, 1039-40 (8th Cir. 2001) (finding claimant's failed to allege depression in her application was "significant," even though evidence of the impairment was later developed).

Limited evidence in the record indicates Squier might suffer from possible conversion disorder. The main basis (and sole medical opinion relied on by Squier) came from a psychological examination in January 2017 (for Squier's workers' compensation claim) conducted by Paul L. Ascheman, PhD. AR 228-37; Doc. 17 at 5. Dr. Ascheman diagnosed Squier with preexisting major depressive disorder (first documented in 2004 "and often with associated somatic complaints" such as headaches and fatigue), and noted that Squier "also meets criteria for Somatic Symptom Disorder, which is also preexisting." AR 236-37. One progress note, from Vicki Clark, ARNP, in September 2015, stated Squier was "positive for mild paranoia and multiple somatic complaints," but did not elaborate. AR 1276. No treating physician discussed or diagnosed conversion disorder, which distinguishes the cases Squier relies upon in arguing the ALJ erred. *See Nowling v. Colvin*, 813 F.3d 1110, 1116 (8th Cir. 2016) (claimant's providers

5

consistently diagnosed conversion disorder); *Easter*, 867 F.2d at 1129 (the record contained uncontradicted diagnoses of conversion disorder from treating and consulting physicians); *see also* ***Delrosa v. Sullivan***, 922 F.3d 480, 485-86 (ALJ did not properly consider combined effects of claimant's mental and physical impairments because ALJ entirely rejected treating source diagnosis of "chronic anxiety depression;" ALJ directed, on remand, to consider possible effects of claimant's psychological condition in evaluating claimant's subjective complaints); ***Cunningham v. Apfel***, 222 F.3d 496, 501-02 (8th Cir. 2000) (ALJ failed to consider claimant's significant mental limitations, demonstrated by the record, and disregarded medical opinions that claimant suffered from diabetic neuropathy and disabling depression).

Squier argues that, in particular, the ALJ should have considered potential conversion disorder in evaluating Squier's alleged fatigue and need to elevate her legs. Doc. 17 at 5-6.[6] Levinson attributed Squier's reported fatigue, in part, to her depression—not conversion or somatoform disorder. AR 568-69; *see also* AR 527 (duplicative of AR 569). The ALJ fully considered Squier's depression and anxiety, including her "excessive worrying" (AR 18-19), and Squier does not challenge that assessment.[7] Squier's depression is a longstanding condition, predating her alleged onset date. AR 411 (noting long history of depression dating back to 2008 and prior successful treatment with medication); AR 509 (treatment note from June 2013 discussing history of depression that was worsening). Dr. Ascheman believed Squier's "preexisting major depressive disorder" was aggravated by her perceived mistreatment, not her fall, and that

---

[6] Dr. Ascheman identified Squier's somaticized symptoms as "brain fog," stomach issues, excessive itching, pain sensitivity, and fatigue, but made no mention of a perceived need to elevate her feet. AR 232, 237.

[7] Squier testified that medication helped her PTSD symptoms "a little bit," but she still suffered from panic attacks (usually when around people). AR 43-46. She also testified that her depression made it hard for her to handle confrontation and be around people. AR 43-47. The ALJ included a limitation that she have only occasional contact with the public in the RFC determination. AR 15. Squier fails to show how a greater limitation would be warranted.

6

her "concerns about recurrent blood clots [were] consistent with [Squier's] pre-existing ruminative thinking, excessive health concerns, and did not substantially factor into the severity of her depression in comparison to other unrelated and recurrent life stressors." AR 235. He ultimately concluded that Squier's ruminative thinking was "within her abilities to regulate were she to seek to do so" and that her "negativistic attitude appears to be somewhat characterological and does not necessitate any specific [medical] restrictions." AR 236.[8] Squier was able to work prior to her alleged onset date, when she suffered from depression and, according to Dr. Ascheman, had ruminative thinking.

Even if the ALJ should have considered a potential conversion disorder, he was not required to accept Squier's statements about the limiting effects of her impairments. Squier points to treatment notes in early 2016 from her psychotherapist, Jen Hansen, PhD, that discussed Squier's fear of having another blood clot and perceived need to keep her feet elevated. AR 1212-15.[9] Squier cites no additional medical evidence to support her allegation. She testified at the administrative hearing in May 2017 that her blood clotting disorder required her to elevate her feet six to ten hours per day. AR 48. This was not based on medical advice (AR 59), and the only recommendation for Squier to elevate her legs came in February 2014 (after her fall), at which time she was told to remain active, but that "she [*could*] elevate her leg *when sitting*." AR 370 (emphasis added). Squier testified she elevated her legs because she was afraid of getting another blood clot and because it just made her feet feel better. AR 48. Regardless, the record shows Squier was generally able to cook, clean, shop for groceries, and ride in a car. AR 49, 51, 235. In addition, she could move snow and heavy boxes, and go camping. AR 993, 1017, 1033, 1192. The ALJ concluded that in addition to inconsistencies with

---

[8] Dr. Ascheman also noted that although Squier had received psychotherapy, her somatic symptoms were not addressed through that treatment, and he believed continued use of psychotropic medication, as well as changes in lifestyle (including stopping smoking) would improve Squier's mental and physical health. AR 232, 236.

[9] The record contains duplicative treatment notes from these visits. *See* AR 1234-37.

the medical evidence, Squier's activities of daily living undercut her statements about the intensity, persistence, and limiting effects of her symptoms. AR 18-19. *See* **Hamman v. Berryhill**, 680 F. App'x 493, 495 (8th Cir. 2017) (finding sufficient evidence supported evaluation of claimant's subjective complaints (including activities of daily living) even if ALJ had erred in discounting those complaints in light of claimant's diagnosis of somatoform disorder (citing *Easter*, 867 F.2d at 1130)).

The ALJ properly considered the combined effects of Squier's physical and mental impairments. In addition, the record does not provide substantial support to find that the ALJ erred in failing to consider that Squier may suffer from conversion disorder. Accordingly, I recommend affirming the ALJ's RFC determination.

### B. Appointments Clause Challenge

The Appointments Clause of the Constitution requires that principal officers be appointed by the president with the advice and consent of the Senate and that inferior officers be appointed by "the President alone, . . . the Courts of Law, or . . . the Heads of Departments." **U.S. Const. art. II, § 2, cl. 2**; *see also* **Lucia**, 138 S. Ct. at 2051 & n.3. The Appointments Clause does not apply to "non-officer employees—part of the broad swath of 'lesser functionaries' in the Government's workforce." **Lucia**, 138 S. Ct. at 2051.

The Supreme Court recently held in *Lucia* that the five ALJs for the Securities and Exchange Commission (SEC) are "inferior officers" subject to the Appointments Clause, as they "exercise[] significant authority pursuant to the laws of the United States." ***Id.*** The Court relied on *Freytag v. Commissioner*, 501 U.S. 868 (1991), in which it held special trial judges of the United States Tax Court were inferior officers subject to the Appointments Clause, noting that both SEC ALJs and Tax Court special trial judges: (1) serve career appointments "to a position created by statute, down to its 'duties, salary, and means of appointment'"; (2) take testimony during hearings and may take pre-hearing depositions; (3) administer oaths, rule on motions, and generally regulate the court during

8

a hearing; (4) rule on the admissibility of evidence, (5) have the power to enforce compliance with discovery, including to punish contempt by excluding people from the courtroom, and (6) issue opinions detailing factual findings and legal conclusions and ordering appropriate remedies.  138 S. Ct. at 2052-54 (quoting *Freytag*, 501 U.S. at 878).  The Court ordered that the petitioner receive a new administrative hearing from a properly appointed official, noting that the petitioner "timely challeng[ed]" the validity of the appointment before the administrative agency.  *Id.* at 2055.  The petitioner had not raised the Appointments Clause challenge to the ALJ at any point during the "nine days of testimony and argument," but after the ALJ rendered an unfavorable decision, the petitioner appealed to the SEC and argued "that the administrative proceeding was invalid because [the ALJ] had not been constitutionally appointed."  *Id.* at 2050.

Squier argues that following the reasoning in *Lucia*, Social Security ALJs are inferior officers subject to the Appointments Clause, and that her case should be remanded for a new hearing before a constitutionally appointed ALJ.  Squier did not raise this issue at any point during the administrative proceedings.  Thus, the Commissioner argues that Squier has forfeited her Appointments Clause challenge.

In *Freytag*, the petitioners challenged the appointment of the special trial judge for the first time on judicial review—indeed, the petitioners had consented in the administrative proceedings to trial by a special trial judge.  501 U.S. at 871-72.  Before the Supreme Court, they argued that Appointments Clause challenges as a class cannot be forfeited or waived.  *Id.* at 893 (Scalia, J., concurring).  The majority opinion did not address this argument, instead "exercis[ing] its discretion to consider" the Appointments Clause challenge (which it classified as a "nonjurisdictional structural constitutional objection[]").  *Id.* at 878-79 (majority); *id.* at 893 (Scalia, J., concurring).  The Court noted the Appointments Clause challenge was "neither frivolous nor disingenuous" and went "to the validity of the Tax Court proceeding."  *Id.* at 879 (majority).  The Court therefore concluded this was "one of those rare cases in which [a court] should exercise

9

[its] discretion." *Id.* The Eighth Circuit has interpreted *Freytag* as creating a discretionary rule in which "a reviewing court generally is permitted (though not obliged) to hear a belated appointments clause challenge." *NLRB v. RELCO Locomotives, Inc.*, 734 F.3d 764, 795 (8th Cir. 2013); *see also Jones Bros., Inc. v. Sec. of Labor, Mine Safety, & Health Admin.*, 898 F.3d 669, 677-78 (6th. Cir. 2018) (excusing forfeiture of Appointments Clause challenge when the plaintiff noted a circuit split on the issue before the administrative agency (Federal Mine Safety and Health Review Commission) but declined to "press" the issue); *Turner Bros., Inc. v. Conley*, 757 F. App'x 697, 699-700 (10th Cir. 2018) (holding claimant forfeited Appointments Clause challenge based on *Lucia* by failing to raise it to the agency (the Department of Labor Benefits Review Board)); *Kabani & Co., Inc. v. SEC*, 733 F. App'x 918, 919 (9th Cir. 2018) ("[P]etitioners forfeited their Appointments Clause claim by failing to raise it in their briefs or before the agency [the SEC].").

The vast majority of courts to address this issue have held that the claimant forfeited his or her *Lucia*-based Appointments Clause challenge by failing to raise it to the Social Security Administration, and the courts have declined to excuse the forfeiture. *See, e.g., Morrow v. Berryhill*, No. C 18-04641 WHA, 2019 WL 2009303, at *4 (N.D. Cal. May 7, 2019); *Kline v. Berryhill*, No. 3:18-CV-00180-FDW, 2019 WL 1782133, at *6 (W.D.N.C. Apr. 23, 2019); *Hutchins v. Berryhill*, No. 18-10182, 2019 WL 1353955, at *3 (E.D. Mich. March 26, 2019) (rejecting report and recommendation); *Diane S.P. v. Berryhill*, No. 4:17cv143, 2019 WL 1879256, at *23 (E.D. Va. Mar. 21, 2019) (adopting report and recommendation); *Valasquez ex rel. Valasquez v. Berryhill*, No. CV 17-17740, 2018 WL 6920457, at *2-3 (E.D. La. Dec. 17, 2018) (collecting cases), *report and recommendation adopted*, 2019 WL 77248 (Jan. 2, 2019); *Flack v. Comm'r of Soc. Sec.*, No. 2:18-cv-501, 2018 WL 6011147, at *4 (S.D. Ohio Nov. 16, 2018) (collecting cases), *report and recommendation adopted*, 2019 WL 1236097 (S.D. Ohio Mar. 18, 2019). A few courts, however, have found Social Security claimants do

not need to raise Appointments Clause challenges to preserve the argument for judicial review or have otherwise excused the forfeiture. *See Ready v. Berryhill*, No. CV 18-04289, 2019 WL 1934874, at *2 (E.D. Pa. Apr. 30, 2019); ; *Culclasure v. Comm'r of Soc. Sec. Admin.*, No. 18-1543, 2019 WL 1641192, at *12 (E.D. Penn. Apr. 16, 2019); *Bradshaw v. Berryhill*, No. 5:18-CV-00100-RN, 2019 WL 1510953, at *2-11 (E.D.N.C. Mar. 26, 2019); *Probst v. Berryhill*, No. 5:18-CV-130-JG, 2019 WL 1749135, at *8 (E.D.N.C. March 22, 2019); *Bizarre v. Berryhill*, 364 F. Supp. 3d 418, 425 (M.D. Penn. 2019); *Fortin v. Comm'r of Soc. Sec.*, No. CV 18-10187, 2019 WL 421071, at *1-4 (E.D. Mich. Feb. 1, 2019), *report and recommendation rejected in relevant part*, No. 18-10187, 2019 WL 1417161 (E.D. Mich. Mar. 29, 2019); *Muhammad v. Berryhill*, No. CV 18-172, 2018 WL 8139774, at *6 (E.D. Pa. Nov. 2, 2018) (report and recommendation), *objections filed*.

    I decline to follow decisions from district courts outside the Eighth Circuit. Every district court in the Eighth Circuit to address the issue (including the Northern District of Iowa) has found a Social Security claimant's Appointments Clause challenge raised for the first time on judicial review to be forfeited. *See Kesterson v. Berryhill*, No. 18-CV-2048-LRR, 2019 WL 1938809, at *18 (N.D. Iowa May 1, 2019) (Roberts, J.) (report and recommendation); *Sexton v. Berryhill*, No. 18-CV-1024-LTS, 2019 WL 1495286, at *15 (N.D. Iowa Apr. 4, 2019) (Roberts, J.) (report and recommendation); *Hernandez v. Berryhill*, No. 8:18CV274, 2019 WL 1207012, at *6 (D. Neb. Mar. 14, 2019); *Murphy v. Berryhill*, No. 18-CV-61-LRR, 2019 WL 1140235, at *17 (N.D. Iowa Mar. 12, 2019) (Roberts, J.); *Kimberly B. v. Berryhill*, No. 17-CV-5211 (HB), 2019 WL 652418, at *15 (D. Minn. Feb. 15, 2019); *Audrey M.H. v. Berryhill*, No. 17-CV-4975 (ECW), 2019 WL 635584, at *12 (D. Minn. Feb. 14, 2019); *White v. Berryhill*, No. 18-CV-2005-LTS, 2019 WL 586757, at *15 (N.D. Iowa Feb. 13, 2019) (Roberts, J.), *report and recommendation adopted sub nom. White v. Comm'r of Soc. Sec.*, No. C18-2005-LTS, 2019 WL 1239852 (N.D. Iowa Mar. 18, 2019); *Catherine V. v.*

*Berryhill*, No. CV 17-3257 (DWF/LIB), 2019 WL 568349, at *2 (D. Minn. Feb. 12, 2019*)*; *Bowman v. Berryhill*, No. 4:18-CV-157 RP-HCA, 2018 WL 7568360, at *12 (S.D. Iowa Dec. 13, 2018); *Stearns v. Berryhill*, No. 17-CV-2031-LTS, 2018 WL 4380984, at *6 (N.D. Iowa Sep. 14, 2018) (Strand, C.J.); *Davis v. Comm'r of Soc. Sec.*, No. 17-cv-80-LRR, 2018 WL 4300505, at *8-9 (N.D. Iowa Sept. 10, 2018) (Reade, J.); *Iwan v. Comm'r of Soc. Sec'y*, No. 17-CV-97-LRR, 2018 WL 4295202, at *9 (N.D. Iowa Sep. 10, 2018) (Reade, J.); *Thurman v. Comm'r of Soc. Sec.*, No. 17-CV-35-LRR, 2018 WL 4300504, at *9 (N.D. Iowa Sept. 10, 2018) (Reade, J.).[10] Squier does not make any new arguments that have not already been addressed by these prior decisions. I adopt the reasoning of these decisions (and of the majority of courts to address the issue). Accordingly, I recommend the district judge reject Squier's Appointments Clause challenge.

### III. CONCLUSION

I respectfully recommend that the decision of the Social Security Administration be **affirmed** and that judgment be entered in favor of the Commissioner.

Objections to this Report and Recommendation must be filed within fourteen days of service in accordance with 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b). Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections. Fed. R. Civ. P. 72. Failure to object to the Report and Recommendation waives the right to *de novo* review by the district court of any portion of the Report and

---

[10] A court in the District of Nebraska noted that Appointments Clause challenges are deemed to be "in the category of nonjurisdictional structural constitutional objections that could be considered on appeal whether or not they were ruled upon below," but ultimately, the court did not address the merits of the Appointments Clause issue, as the court was already remanding on other grounds and noted that the claimant could raise the issue on remand to the Social Security Administration. *See Mann v. Berryhill*, No. 4:18-CV-3022, 2018 WL 6421725, at *8 (D. Neb. Dec. 6, 2018)

Recommendation, as well as the right to appeal from the findings of fact contained therein. *See United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).

**DONE AND ENTERED** this 28th day of May, 2019.

Kelly K.E. Mahoney
Chief United States Magistrate Judge
Northern District of Iowa